J-S07004-17
J-S07005-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE ADOPTION OF: S.L.W. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.N.W. | No. 1698 MDA 2016 |

Appeal from the Order Entered September 13, 2016
In the Court of Common Pleas of York County
Orphans' Court at No(s): 2016-0093

| | |
|---|---|
| IN THE INTEREST OF: S.W., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF: S.N.W., MOTHER | No. 1705 MDA 2016 |

Appeal from the Order Entered September 13, 2016
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CP-0000227-2015

BEFORE: BOWES, LAZARUS AND MUSMANNO, JJ.

MEMORANDUM BY BOWES, J.: **FILED MARCH 21, 2017**

S.N.W. ("Mother") appeals from the orders entered on September 13, 2016, wherein the trial court terminated her parental rights to her minor

child, S.L.W, and changed S.L.W.'s permanency goal from reunification to adoption.[1]  We affirm.

S.L.W. was born during August 2005, from an ongoing relationship between Mother and B.L.S., Sr. ("Father").  While in Mother's care, S.L.W. was neglected and abused physically.  She was exposed to drug use, pornography, and witnessed sexual acts.  Consequently, Father was granted primary physical custody of the child.  S.L.W. was diagnosed with a number of behavioral and psychological disorders, including reactive attachment disorder, oppositional defiant disorder, attention deficit/hyperactivity disorder – combined presentation, and other disorders arising from her family relationships and traumatic upbringing.

On January 12, 2015, S.L.W. entered a community residential rehabilitation level foster home through the York-Adams Mental Health-Intellectual Developmental Disabilities program ("MH-IDD"), and Father was directed to attend family therapy sessions and actively partake in the child's treatment.[2]  Father neglected to participate.  As a result of Father's inaction, the insurance company funding S.L.W.'s rehabilitative foster care dropped

_____

[1] Since these consecutively listed appeals involve identical parties and emerged from the same hearing, we consolidate the above-captioned cases *sua sponte* for ease of disposition.

[2] It is not clear form the record why S.L.W. initially entered the community residential rehabilitation foster care system.

coverage. At that time, MH-IDD was unable to locate Father, and Mother had not contacted S.L.W. for over three years.

On October 8, 2015, the York County Office of Children, Youth, and Families ("CYF") filed an application for emergency protective custody. The juvenile court granted that application and awarded CYF temporary legal and physical custody. On October 21, 2015, the court adjudicated S.L.W. dependent, finding, *inter alia*, that Mother had no involvement with the child for over three years, that she was unemployed, and that she lacked stable housing. Father had still not been located. Thus, the court concluded it was in the child's best interests to be removed from Mother and Father's care and remain in the foster home. The court awarded CYF legal and physical custody of the minor child, and set her placement goal as reunification.

Thereafter, CYF established a Family Service Plan ("FSP"). The plan authorized the agency to create a supervised visitation schedule, but S.L.W.'s therapist did not recommend that Mother and daughter make contact. The court held a permanency review on March 8, 2016. The court noted Mother had moderately complied with the permanency plan and made moderate progress toward alleviating the circumstances which necessitated the original placement. It found that she had obtained employment, but continued to lack appropriate housing. The court acknowledged Mother's cooperation with the agency, but raised concerns regarding Mother's extended lack of contact with S.L.W. It determined that S.L.W.'s placement

goal would remain reunification, with a concurrent goal of adoption. Subsequently, CYF established a revised FSP requiring, among others things, that Mother acquire safe and stable housing by October 2016. The court held a second permanency review and found Mother in minimal compliance and had achieved minimal progress. Specifically, the court observed that she had failed to find suitable housing and had contacted S.L.W. only once, through a letter. Additionally, Mother's paramour, with whom she resided, had failed to complete a threat of harm assessment as previously directed by the court.

On July 11, 2016, CYF filed a petition to terminate Mother and Father's parental rights and a petition to change S.L.W.'s permanency goal from reunification to adoption.[3] Following a hearing on both petitions, the juvenile court terminated Mother and Father's parental rights, and changed S.L.W.'s permanency goal from reunification to adoption. Mother filed a timely notice of appeal, and complied with the court's order to file a Rule 1925(b) statement of errors complained of on appeal. The court authored its Rule 1925(a) opinion, and this matter is ready for our review.

Mother raises three issues for our consideration:

    I.   Whether the trial court erred in changing the goal from reunification to adoption without clear and convincing

_____

[3] Father did not participate in the hearings in this matter, and did not file a notice of appeal to either of the court's orders. Thus, we do not address the order terminating Father's parental rights with regard to S.L.W.

evidence that a change of goal would best serve the interests of the child.

II. Whether the trial court erred in termination Appellant's parental rights without clear and convincing evidence that termination best served the emotional needs and welfare of the child.

III. Whether [CYF] failed to present clear and convincing evidence that termination of Appellant's parental rights best served the emotional needs and welfare of the child.

Mother's brief at 4 (unnecessary capitalization omitted).

Mother contends that the juvenile court erred in changing S.L.W.'s permanency goal from reunification to adoption. We review a court's decision in a dependency case for an abuse of discretion. *In re L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015). In this vein, we must "accept the findings of fact and credibility determination of the trial court if they are supported by the record," but we are not required to "accept the lower court's inferences or conclusions of law." *Id*. (citation omitted). Following an examination and findings of factors pursuant to 42 Pa.C.S. § 6351 (f) and (f.1), regarding matters to be determined at the permanency hearing, the trial court must also determine that the goal change is in the minor child's best interest. *See* Pa.C.S. § 6531(g); *In re R.J.T.*, 9 A.3d 1179 (Pa. 2010).

Mother asserts that the trial court erred in changing S.L.W.'s permanency goal to adoption since she substantially complied with her FSP goals. She alleges that she was cooperative with in-home assistance teams, completed a parenting program, and continually requested to see S.L.W.

- 5 -

She argues that she was denied the opportunity to see S.L.W. by the child's therapist, Ms. Pernilla Lovegrove, whom Mother claims mistakenly believed that Mother was barred from contact due to a court order. As a result of this mistaken belief, Mother contends that she was unfairly obstructed from visiting her daughter, and denied the opportunity to participate in her therapy. Further, Mother maintains that she had obtained housing by the time of the permanency hearing. Thus, Mother concludes, the court erred in failing to appreciate the full extent of her progress towards alleviating the circumstances which necessitated the removal of S.L.W.

The juvenile court highlighted S.L.W.'s need for stability, consistency, and permanency in finding that adoption was in her best interests. The court considered the child's expressed interest in having a permanent home. In addition, it emphasized S.L.W.'s childhood trauma suffered under Mother's care, and found that Mother was not suited to manage her daughter's psychological disorders and special needs. The court credited S.L.W.'s guardian *ad litem*, noting, "even absent the child's trauma, it would be a very difficult road to reunify child and Mother." Trial Court Opinion, 11/7/16, at 9.

Upon review of the record, we find substantial support for the court's findings of facts and credibility determinations, and therefore, discern no abuse of discretion in its decision to change S.L.W.'s permanency goal from reunification to adoption. The court held two permanency review hearings to

review Mother's compliance with her FSP goals. In the first hearing, the court found Mother to be in moderate compliance with the FSP, and that she had shown moderate progress towards eliminating the original circumstances that necessitated the original placement. In a second permanency review, the court found Mother was minimally compliant and that she had made modest progress to rectify those conditions. Mother challenges this finding, and asserts that her performance between the reviews was substantially similar, and thus, there was no basis for finding her in minimal compliance. We disagree.

Mother's assertion that she obtained suitable housing at the time of the permanency hearing is belied by the record. We observe that the court directed Mother's paramour to obtain a threat of harm evaluation as part of its assessment of Mother's living arrangements. The results of that evaluation were not submitted to the court until the day of the permanency hearing on September 13, 2016. Nevertheless, the report indicated that Mother's paramour would remain a threat of harm to S.L.W. until he had achieved one year of sobriety. Accordingly, it found that the earliest date that could be accomplished would be September 2017. Although Mother stated that, given the choice between her children and her paramour, she would choose her children, the court did not credit her testimony. Indeed, the court specifically stated, "I find it totally not credible that she will ask him to leave in order to keep her children." N.T. Permanency/Termination

Hearing, 9/13/16, at 159-160. Since Mother has only offered evidence of housing arrangements with her paramour, her proclamation that she found suitable housing is not supported by the record.

Mother's averments that she was unfairly denied the opportunity to contact S.L.W. are also contradicted by the record. Initially, Ms. Lovegrove believed that a purported court order blocked Mother from seeing the child. Once the therapist learned that the order did not exist, she still persisted in her opinion that Mother and S.L.W. should not interact. Ms. Lovegrove stated, "in understanding that it wasn't a court order . . . [m]y position, when it came to [S.L.W.'s] reactions and trauma, was the same that, if contact with Mother was to happen, we had to do it at [S.L.W.'s] pace." *Id*. at 28. Furthermore, Ms. Lovegrove indicated that "Mother wanted to have contact, and [S.L.W.] was hesitant." *Id*. at 32. Indeed, in a status review order filed December 2, 2015, the court noted that the therapist believed, "visits between the minor child and her mother would be detrimental to the minor child." *Id*. at 100.

When given the opportunity to make contact with S.L.W. via letter, Mother sent only two missives. Otherwise, she did not send her daughter presents, inquire into the child's progress in therapy or school, or petition the agency for visitation. *Id*. at 70; 86. Thus, we find Mother's supposed inability to contact S.L.W. was not the result of the Ms. Lovegrove's mistaken beliefs as to a purported court order, but rather, the result of her

own failure to take advantage of the visitation and contact arrangements provided by the agency in light of the therapist's recommendation.

Moreover, the record indicates that S.L.W. flourished when provided with stability and consistency. Her behavioral issues subsided in foster care with the aid of regular therapy. S.L.W's performance in school showed marked improvement after she was provided with an individualized educational program which better suited her special needs. Thus, we find no abuse of discretion in the court's decision to change S.L.W.'s permanency goal to adoption in order to provide her with consistency and stability. No relief is due.

As Mother's second and third issues overlap, we consider them jointly. In matters involving involuntary termination of parental rights, we are directed by the following guidelines:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determination of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reverse merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (internal citations and quotation marks omitted). Moreover, "the trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility

- 9 -

determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). Lastly, "if competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is guided by § 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child. Under § 2511,

> the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citation omitted). Evidence is clear and convincing when it is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (citation omitted).

In this case, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(1), (2), (5), and (b). It is well-settled that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of § 2511(a), as well as § 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

At the outset, we examine the court's termination of Mother's parental rights pursuant to § 2511 (a)(1). Section 2511(a)(1) permits the termination of parental rights when "the parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." Pa.C.S. § 2511 (a)(1). A parent has an affirmative duty in this regard. The parent is obliged to "utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship." *In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004).

In addressing § 2511(a)(1), the trial court found that CYF had offered clear and convincing evidence that Mother failed to perform any parental duties for at least sixth months prior to the filing of the petition for termination. The court noted that Mother had not fulfilled any parental duties since the child was five years old, six years prior to the hearing. It noted Mother's own concession that she had not seen S.L.W. since

- 11 -

September 2013. The court underlined Mother's lack of knowledge of basic information regarding the child, such as her teacher's or doctor's names. Finally, the court stressed that Mother had only authored two letters to the child, had not provided any gifts, and had not inquired into the child's well-being. Thus, it found sufficient evidence to support the termination of Mother's parental rights under § 2511(a)(1).

Mother asserts that she continually asked to visit with S.L.W., but could not do so due to the supposed court order mentioned *supra*. She contends that she wrote letters to the child as soon as she was permitted, and that she had presents for the child, but wanted to wait until S.L.W. was home to provide them. Mother maintains that she fulfilled her parental duties to the extent permitted by the court, and thus, she has not evidenced a settled purpose to relinquish her parental rights. We disagree.

Our review of the certified record supports the trial court's finding of sufficient grounds for termination under § 2511(a)(1). Mother conceded that she has not seen S.L.W. since September 2013, three years prior to the hearing. When informed by Ms. Lovegrove that she was unable to see her daughter due to a court order, Mother made no attempt to dispel that erroneous belief. Furthermore, Mother failed to petition CYF for permission to visit with S.L.W., and when the agency attempted to schedule a visit, "Mother [refused] to ride in the same vehicle with [Father]." N.T. Permanency/Termination Hearing, 9/13/16, at 100. Consequently, no visit

- 12 -

was scheduled. The two letters sent by Mother hardly signal an evident determination to maintain the parent-child relationship, and in themselves, do not constitute the fulfillment of one's parental obligations. *See In re S.S.W.*, 125 A.3d 413 (Pa.Super. 2015) (parental duty "requires continuing interest in the child and a genuine effort to maintain communication and association with the child."). We find Mother has not exercised reasonable firmness in resisting the obstacles barring her from a continuing relationship with S.L.W., and thus, she has failed to perform her parental duties.

Next, we consider whether termination was proper under § 2511(b). Our High Court has stated:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012). In *In re K.M.*, 620 A.2d [481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, *supra*, at 267. When evaluating a parental bond, "the court is not required to use expert testimony." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2010) (citation omitted). As such, "social workers and caseworkers can offer evaluations as well. Additionally, § 2511(b) does not require a formal bonding evaluation." *Id*. (internal citation omitted).

- 13 -

In discussing § 2511(b), the trial court observed that CYF offered clear and convincing evidence that the developmental, physical, and emotional needs and welfare of S.L.W. are best served by the termination of Mother's parental rights. Specifically, the court stated, "[a]s evidenced by a significant amount of evidence, the child has little to no bond with Mother." Trial Court Opinion, 11/7/16, at 6. It noted the extended length of time since Mother had seen the child. The court reviewed Ms. Lovegrove's testimony, who intimated that S.L.W. rarely spoke of her Mother, and when she did, the therapist believed "it was clear that Mother's relationship with child had a negative impact on her." *Id*. The court also underscored S.L.W.s' psychological issues and specials needs, and found that Mother had "made no effort to become involved or educate herself about the child's physiological disorders." *Id*. Therefore, it found sufficient evidence that terminating Mother's parental rights was in S.L.W.'s best interests.

Mother provides various explanations for why she does not share a bond with S.L.W. First, she claims that she could not develop a bond with the child due to Ms. Lovegrove's no contact provision. Despite this condition, she insinuates that Ms. Lovegrove found such contact would be beneficial to the child. Second, she alleges that she was unable to educate herself regarding her daughter's disorder since, the "best way" to do so, engagement with Ms. Lovegrove, was foreclosed to her. Mother's brief at

19. Moreover, she claims that neither CYF nor the court offered her an alternative means to learn about the child's special needs.

Our review of the certified record corroborates the trial court's best interest analysis. As discussed *supra*, we are not persuaded by Mother's argument that the therapist's involvement with S.L.W. barred Mother from bonding with her daughter. Mother simply failed to utilize the avenues open to her, or make any attempt to overcome the obstacles hampering her parent-child relationship. Ms. Lovegrove testified that contact with Mother "has been . . . a positive influence." N.T. Permanency/Termination Hearing, 9/13/16, at 23. Nevertheless, the therapist also indicated that Mother and S.L.W. shared no bond, that the child was uninterested in even phone contact with Mother, and that she had not expressed a desire to reside with Mother. *Id*. at 19-21.

As it pertains to Mother's involvement with S.L.W.'s education and development, Mother testified she made no attempts to learn about the child's special needs. *Id*. at 137; 149-150. Even assuming that Mother was correct in deeming involvement in S.L.W.'s therapy was the best means for edifying herself, this does not excuse her from pursuing the many other channels open to her, for example, the internet or the local library. Thus, the record supports the juvenile court's finding that the emotional needs and welfare of S.L.W. favor termination. As stated above, S.L.W. has prospered when provided a stable and consistent environment suited to her unique

needs. Mother has not shown she is capable of delivering the level of care S.L.W. requires, and no parent-child bond exists which would be detrimental to the child if it is permanently severed. Accordingly, we find no abuse of discretion and conclude that the trial court appropriately terminated Mother's parental rights under 23 Pa.C.S. §§ 2511(a)(1) and (b).

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/21/2017